### STANDARD SURETY & CASUALTY CO. OF NEW YORK v. BAKER et al.
### No. 11457.

Circuit Court of Appeals, Eighth Circuit.

July 19, 1939.

Rehearing Denied Aug. 30, 1939.

Charles C. Byers, of Kansas City, Mo. (E. R. Morrison, Richard C. Jensen, and Morrison, Nugent, Berger, Byers & Johns, all of Kansas City, Mo., on the brief), for appellant.

O. W. Watkins, of St. Joseph, Mo., and Richard S. Righter and Horace F. Blackwell, Jr., both of Kansas City, Mo., for appellee Noble I. Ayers.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge:

GARDNER, Circuit Judge.

This is an appeal from an interlocutory order denying an injunction enjoining and restraining appellees from instituting or prosecuting any action or suit involving the subject matter of this suit until entry of final judgment. The proceedings were instituted by the filing of a bill in the nature of a bill of interpleader by appellant. It will be convenient to refer to the parties as they appeared below.

The motion for temporary injunction was denied, on the ground that the bill was insufficient as a bill in the nature of a bill of interpleader. It is therefore essential to examine the allegations of the bill.

The defendants were citizens of various states, and none of them was a citizen of New York, of which the plaintiff was a citizen. In 1936 and 1937, and during part of 1938, A. B. Collins and Company, Inc., a Missouri corporation, was a dealer in the sale, transfer and exchange of securities within the State of Missouri. Under the provisions of the Missouri statute, the Collins Company, in applying to the Commissioner or Supervisor of Corporation Registration of Missouri, for registration as a dealer in securities, was required to file a bond in the sum of $5,000, running to the people of the State of Missouri, conditioned upon faithful compliance by the dealer and its salesmen with the provisions of the Missouri statute. On December 31, 1936, such a bond was executed by the Collins Company as principal and plaintiff as surety. This bond, effective during 1936, was maintained during 1937 by a continuation certificate. On January 1, 1938, the Collins Company executed a new bond in the sum of $5,000, with plaintiff as surety.

In 1938, the Collins Company was adjudged a bankrupt in proceedings still pending in the Western District of Missouri. Following the institution of the bankruptcy proceedings, numerous actions at law were filed against the plaintiff, the bankrupt, the trustee, and others, to recover damages for alleged breach of the bond. Certain of the defendants claimed to have sustained losses through transactions with the Collins Company, some involving alleged conversions, and others involving non-registration of securities. The aggregate amount sued for was in excess of $20,000. Six of these actions were commenced in the Circuit Court of Jackson County, Missouri, and one has been commenced in the District Court of the United States for the Western District of Missouri. Seventy of the defendants have filed claims against the Collins Company in the bankruptcy proceedings.

Plaintiff alleged that its liability on the bond was limited to $5,000, and that by rea-

son of the conflicting claims of defendants, it was in great doubt as to which defendant or defendants, if any, were entitled to be paid under the bond and in what proportion; that as a result and in consequence it was exposed to double or multiple liability, and hence was entitled to maintain its bill of interpleader under the provisions of Subdivision 26 of Section 41, Title 28 U.S.C.A., as amended, and Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; that as to claims against it based on claimed conversion, wrongful failure to account, or wrongful appropriation, it was not liable to any defendant and it denied liability; that unless the relief prayed were granted, it would suffer irreparable damage by being required to defend a multiplicity of suits, and would be exposed to the danger of multiple liability. It asked for injunctive relief and obtained a preliminary injunction restraining and enjoining defendants from instituting or prosecuting any action or suit upon the bonds described in the bill. It deposited a bond payable to the clerk of the court, in the sum of $5,000, conditioned upon compliance by the plaintiff with the further order or decree of the court with respect to the subject matter of the controversy. It prayed judgment that it was not indebted to any defendant; that its aggregate liability was $5,000; that it was not liable for failure of its principal to account for the conversion or misappropriation of funds; that if there was a liability, the defendants be required to interplead, and the plaintiff be discharged from liability to all persons except those whom the court should adjudge entitled thereto; that defendants be restrained from instituting any action against plaintiff for the recovery of the amount of the bond and from proceeding further in proceedings already instituted.

In dissolving the preliminary injunction, the lower court expressed the view that it was essential "that there shall be conflicting claimants to the same fund or subject matter held by the plaintiff, and a second essential, that the plaintiff shall have some right to equitable relief as against the defendants, or some of them, with respect to the same fund or subject matter."

■■■ On this appeal plaintiff contends that its bill was sufficient as a bill in the nature of a bill of interpleader. Interpleader has long been recognized as an equitable remedy available in federal courts. It is not primarily dependent upon statute, but was maintainable under the general equity jurisdiction. The nature of this remedy and its enlargement by federal statute has so recently been considered by this court in an exhaustive opinion by Judge Sanborn in Klaber v. Maryland Casualty Company, 8 Cir., 69 F.2d 934, that any attempt here to consider the history and development of the remedy would seem to be an act of supererogation. Since that opinion was handed down, however Congress has passed the Act of January 20, 1936, 28 U.S.C.A. § 41, subd. (26), further enlarging the scope and availability of the remedy by interpleader or by bill in the nature of interpleader.

■■■ In a bill in the nature of interpleader, plaintiff may have some personal interest in the subject matter. Here, plaintiff denies the validity of the claims against it and so the pleading filed must be construed to be a bill in the nature of a bill of interpleader. Even before the adoption of the federal statutes on the subject, a federal court of equity had jurisdiction to entertain a bill in the nature of interpleader otherwise good even though plaintiff disclosed a personal interest in the subject matter, although under such circumstances he was not entitled to costs or counsel fees. Groves v. Sentell, 153 U.S. 465, 14 S.Ct. 898, 38 L.Ed. 785; Sherman Nat. Bank v. Shubert Theatrical Co., 2 Cir., 247 F. 256; Fleming v. Phœnix Assur. Co., 5 Cir., 40 F.2d 38. It is, however, contended that even though such a bill might be maintained notwithstanding plaintiff's interest, yet it will not lie unless there is some special ground for equitable relief besides double vexation. Here, it appears that there are some seventy claimants, so that there is not only risk of double or multiple liability, but there is an unnecessary vexation to the plaintiff, who is threatened with repetition of demands and claims. Plaintiff's need for equitable relief is not diminished by the fact that it claims some interest in the subject matter.

Rule 22 of the new Federal Rules of Civil Procedure provides that, "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims

of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. * * * The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Section 24(26) of the Judicial Code, as amended, U.S.C., Title 28, § 41(26). Actions under that section shall be conducted in accordance with these rules."

The liability of the plaintiff here is limited by contract, but according to the allegations of its bill defendants claim in excess of that limitation.

■ In the Act of 1936, by (a) (1) of the Act, 28 U.S.C.A. § 41(26), the court is given jurisdiction if "two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy, or other instrument, or arising by virtue of any such obligation." This provision was not contained in the earlier interpleader acts, and it indicates the congressional intent materially to broaden the scope of the act.

In the recent case of Texas v. Florida, 59 S.Ct. 563, 567, 83 L.Ed. 817, 121 A.L.R. 1179, the opinion in which was handed down after the trial of this case in the lower court, the Supreme Court considered bills in the nature of interpleader and held that the sole ground for equitable relief in strict bills of interpleader was the danger of injury because of the risk of multiple suits when the liability was single, and as plaintiffs, who were not mere stakeholders, might be exposed to that risk, equity would extend its jurisdiction to such cases by a bill in the nature of interpleader.

■ Plaintiff here is confronted with a multiplicity of suits, the aggregate demands of which exceed its liability. In Texas v. Florida, supra, the court said: "A plaintiff need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial."

The statute provides that the titles or claims need not have a common origin and need not be identical. They need but be adverse, and may be independent of each other. This language is, we think, broad enough to eliminate the prior judicial interpretation of mutual exclusiveness. There might well be successive liabilities and competing claims for priority, all pressing for precedence, some of which could preclude others from participation, yet the danger and possibility of vexation and exposure to double liability would be present as much as if the adverse claimants each had separate mutually exclusive claims to the whole of the fund, any one of which would exhaust it. It would indeed be fortuitous if among several claims, none of which had a common origin and none of which had identity with the others, but each adverse to the others, and each independent of the others, there should be that mutual exclusiveness formerly deemed essential to the remedy. The Texas case originated in the Supreme Court, and hence the court did not consider specifically the statute nor the rules of court.

It is urged by defendants that there can be no recovery in excess of the penalty of the bond, and hence plaintiff can not claim benefit of the remedy of interpleader based on the threat of multiple liability. This, however, is not sufficient to defeat the right to the remedy of interpleader in this case. Liability is asserted by defendants beyond the penalty of the bond. Dugas v. American Surety Co., 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720; North St. Louis Building & Loan Ass'n v. Obert, 169 Mo. 507, 69 S.W. 1044; Thomas Laughlin Co. v. American Surety Co., 1 Cir., 114 F. 627; Fleming v. Phœnix Assur. Co., supra.

It may finally be determined that one or two only are entitled to recover, yet judgments might be procured on many of these claims simultaneously if defendants may proceed to the prosecution of their various suits. There might not be opportunity to plead by way of amendment or supplemental answer, the recovery of a prior judgment against plaintiff on the same bond. Again, courts might not permit such a defense because, perchance, the courts might hold that satisfaction and adjudication of liability alone would satisfy the requirements of the bond. After recovery of judgments, execution might issue on all, and plaintiff might find it impossible to set aside final judgments. Even if it be assumed that the first to recover judgments or to issue execution should first be paid until the liability on the bond

was exhausted, subsequent claimants in order of recovery on judgment or issuing of execution might insist that the penalty should be apportioned (Thomas Laughlin Co. v. American Surety Co., supra), and liability on that ground might be asserted. In these circumstances there is a real threat of liability, and it was to meet such a situation that the interpleader statutes were adopted. As said in Metropolitan Life Insurance Co. v. Hamilton, N.J.Ch., 70 A. 677, 679, " * * * claims prosecuted in this way under the solemn sanction of legal proceedings in the courts are claims which the complainant has a right to regard as hazardous to its financial interests."

It appears here that the aggregate of the claims is far in excess of plaintiff's liability. In such circumstances, each claimant is interested in reducing or defeating the claim of every other claimant, and the adversity of claim required by statute is, we think, satisfied. Fidelity & Deposit Co. v. A. S. Reid & Co., D.C., 16 F.2d 502; Dugas v. American Surety Co., supra.

In the last cited case, a bond in the penal sum of $20,000 had been given, conditioned for the payment of claims lawfully arising against the principal, an insurance company engaged in writing workmen's compensation in Louisiana. The total of the claims against the bond was in excess of $60,000. The lower court distributed the penal amount of the bond on a pro-rate basis to the numerous claimants. In approving this procedure, the Supreme Court said [300 U.S. 414, 57 S.Ct. 519, 81 L.Ed. 720]: "The amount or penalty of the qualifying bond was $20,000. The surety's obligation was not to Dugas alone, but to the other claimants as well; and this obligation was not to pay all claims regardless of their aggregate, but to pay $20,000, or so much thereof as should be needed, and no more."

That case was based upon the Interpleader Act of 1926. The liability of the plaintiff is based upon the provisions of its bond, and hence is single, the same as in the Dugas case. The language of the 1936 Act specifically provides for bills in the nature of interpleader in the cases of bonds where two or more adverse claimants are claiming to be entitled to any one or more of the benefits arising by virtue of the bond. The statute sanctions the entertainment of a suit "although

the titles or claims of the conflicting claimants do not have a common origin or are not identical, but are adverse to and independent of one another."

It seems clear that each claimant need not assert a right to the entire fund, and if the claims in the aggregate exceed the fund that may be made available for their payment, the requirement of adversity of claims is satisfied. The statute does not define nor limit bills in the nature of bills of interpleader. It sets forth some conditions under which the remedy may be had and negatives the necessity that claims shall have a common origin and shall be identical. The statute uses technical terms without statutory definition.

The latest controlling pronouncement on this question is to be found in the opinion of Mr. Justice Stone in Texas v. Florida, supra, where it is among other things said: "The peculiarity of the strict bill of interpleader was that the plaintiff asserted no interest in the debt or fund, the amount of which he placed at the disposal of the court and asked that the rival claimants be required to settle in the equity suit the ownership of the claim among themselves. But as the sole ground for equitable relief is the danger of injury because of the risk of multiple suits when the liability is single, * * * and as plaintiffs who are not mere stakeholders may be exposed to that risk, equity extended its jurisdiction to such cases by the bill in the nature of interpleader. The essential of the bill in the nature of interpleader is that it calls upon the court to exercise its jurisdiction to guard against the risks of loss from the prosecution in independent suits of rival claims where the plaintiff himself claims an interest in the property or fund which is subjected to the risk. The object and ground of the jurisdiction are to guard against the consequent depletion of the fund at the expense of the plaintiff's interest in it and to protect him and the other parties to the suit from the jeopardy resulting from the prosecution of numerous demands, to only one of which the fund is subject."

We conclude that the plaintiff alleged sufficient facts to give the court jurisdiction; that it was entitled to a preliminary injunction and to a trial of the suit on the merits. The order appealed from is therefore reversed.