**GREAT AMERICAN INSURANCE COMPANY, a Corporation, Appellant,**

v.

**BANK OF BELLEVUE and American Home Assurance Company, Appellees.**

No. 18226.

United States Court of Appeals Eighth Circuit.

Sept. 27, 1966.

Benjamin M. Wall, of Haney, Walsh & Wall, Omaha, Neb., for appellant.

L. R. Brodkey, Omaha, Neb., for appellee Bank of Bellevue. Charles S. Reed, Omaha, Neb., with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the District of Nebraska, rendered in an interpleader action commenced by plaintiff, Great American Insurance Company, a corporation of New York, against numerous defendants of diverse citizenship, pursuant to 28 U.S.C. § 1335.[1]

Plaintiff (appellant herein), Great American Insurance Company, issued and was surety on a used car dealer's bond required by Nebraska law to cover the 1962 business activities of one Harry Layne, d/b/a Layne Motor Company of Bellevue, Nebraska. This bond, which is the subject matter of this interpleader action, had a face penalty of $10,000 and was effective from January 1, 1962 through December 31, 1962. In addition to this bond it appears that plaintiff was surety on at least one other bond which was issued to cover the business activities of Layne for the year 1961. This second bond, however, was not mentioned in the interpleader complaint nor in any of plaintiff's supporting papers.

During the years 1961 and 1962, Layne engaged in numerous fraudulent transactions relating to the sale and financing of automobiles. As the result of Layne's fraudulent activities, plaintiff was beset with numerous claims, the total of which exceeded $10,000. One of the claimants was defendant Bank of Bellevue. American Home Assurance Company is an insurer of the Bank of Bellevue and is a claimant in this suit by virtue of its right of subrogation on amounts it paid to the Bank of Bellevue because of the Bank's

---

1. Pertinent part of § 1335 reads:
"Interpleader

"(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, * * * if

"(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, * * *." See also Rule 22, Fed.R.Civ.P.

losses on some of Layne's activities.[2] At this juncture, plaintiff interpleaded all of the known and unknown claimants, admitted liability under the 1962 bond and paid the face amount of the single $10,000 bond into court. The answers to this bill of interpleader set forth the various claims the defendants had against Layne. Plaintiff presented the affidavit of Ronald Hartman, State Agent for plaintiff, which stated that his Company, "has not issued any bond other than the one referred to * * *." Thereafter, plaintiff's motion for summary judgment was granted and plaintiff's liability on this bond in the order of summary judgment was specifically limited to the $10,000 amount deposited with the Court.

After the summary judgment, the individual claimants began to resolve their individual claims to the deposited fund. In the course of the discussion it was discovered that two of the transactions between Layne and the Bank of Bellevue actually originated in 1961 and would, therefore, not be covered in the pleaded bond for 1962. The parties defendant, being all of the claimants to the fund, therefore stipulated, amongst themselves but not with the plaintiff, that the two claims arising from the 1961 transaction be dismissed without prejudice to seek relief under "any bond other than the one named in plaintiff's complaint." This stipulation was approved by the District Court and incorporated in its final judgment. Plaintiff objected to the dismissal without prejudice of the two claims here

in issue, and appeals from that portion of the District Court's judgment.

Plaintiff's first argument on appeal is that since its interpleader complaint alleged the 1962 bond and set forth the transactions in question, the failure of appellees to deny that the transactions fell under the coverage of the 1962 bond constituted a judicial admission binding them to seek satisfaction only under the 1962 bond. Therefore, according to plaintiff, the subsequent dismissal without prejudice to these claims was error.

■ We cannot agree with appellant's interpretation of these pleadings. Plaintiff pleaded the single 1962 bond and tendered the $10,000 penalty into court. In filing its interpleader, plaintiff set forth the various claims being made against it. It did not attempt to contest the validity of the claims asserted. Plaintiff pleaded, moreover, that it was not concerned as to the disposition of these claims so long as the recovery against the 1962 bond did not exceed the amount paid into court, and that it was merely "a disinterested stakeholder, * * * indifferent to the respective claims thereto of the defendants." In granting the summary judgment, the Court afforded plaintiff the exact relief it sought. Nowhere did plaintiff indicate that should relief be denied on these claims under the 1962 bond, it was not to be held liable under any other bond issued for another year.

Likewise, the various answers set forth claims which defendants believed to be covered by the pleaded bond. They no

2. The Bank's claim was on a promissory note made by Layne on December 4, 1961, secured by a chattel mortgage, which note was subsequently extended to March 17, 1962 and May 4, 1962. Layne promised to deliver title to the mortgaged automobiles but, in fact, never had title.

The American Home Assurance Company claim was based on a promissory note of Layne's, dated December 21, 1961 and made payable to the Bank and secured by a chattel mortgage on two automobiles. Partial payment was made on this note and subsequent extension notes were issued under date of March 17, 1962

and May 4, 1962, secured by one of the two automobiles originally mortgaged. Layne delivered title to the mortgaged automobile to the Bank but the chattel mortgage was not recorded. Layne disposed of the mortgaged automobile after securing a duplicate title. The Bank's resulting loss was covered by a non-filing or chattel lien policy issued by the American Home Assurance Company, which Company, upon the payment of this loss, became subrogated to the Bank's rights against Layne on this particular transaction.

doubt recognized the possibility that these claims may or may not be allowable under the terms of the bond pleaded. In alleging these claims, nowhere did the defendants intimate that should these claims fail because they originated outside the life span of the pleaded bond, no further relief on other non-pleaded bonds could be sought. Plaintiff's interpleader related solely to the 1962 bond, and plaintiff expressly maintained its neutrality in the settlement of the claims. The answers to this complaint merely set forth the claims under the bond and did not indicate that the pleaded bond was the sole source of relief. Therefore, we do not believe these pleadings should be construed to indicate admissions of coverage that would preclude the dismissing of the claims without prejudice to seek relief from other funds not deposited under the 1962 bond.

Even were we to assume, *arguendo,* that the face of these pleadings indicated an admission on the part of the defendants that their loss occurred in 1962, we do not believe plaintiff should be granted the relief it is seeking.

██ The primary step in an interpleader proceeding concerns the determination of a fundholder's right to compel claimants to litigate their numerous claims in one proceeding and to confine total recovery to an amount not exceeding the deposited fund. Standard Surety & Casualty Company of New York v. Baker, 105 F.2d 578 (8 Cir. 1939): As far as the plaintiff is concerned, the sole purpose of this interpleader is to protect it from multiple litigation which may result in losses in excess of the face penalty on the bond. Douglas-Guardian Warehouse Corporation v. Ramy Seed Company, 271 F.2d 24 (8 Cir. 1959); Barron & Holtzoff, 2 Federal Practice and Procedure, § 551 at page 227 (Wright Ed. 1961).

██ Interpleader is an equitable action controlled by equitable principles, Burchfield v. Bevans, 242 F.2d 239 (10 Cir. 1957); Brinson v. Brinson, 334 F.2d 155 (4 Cir. 1964), and the equitable doctrine that one seeking equitable relief must do equity and come into court with clean hands is applicable. Austin v. Texas-Ohio Gas Company, 218 F.2d 739 (5 Cir. 1955).[3] Plaintiff has not complied with these doctrines. The affidavit of plaintiff's agent, Ronald Hartman, stating that the plaintiff, "has not issued any bond other than the one referred to under the terms and provisions of Section 60–619, R.R.S.Nebraska, 1943," is not only misleading but appears to constitute an outright falsehood. A full and fair disclosure by the plaintiff, as is required of one seeking the exercise of the equitable powers of a court would have disclosed the full fund held by the plaintiff and the maximum coverage on all bonds issued by the plaintiff that could be applicable to Layne's activities. The various claimants to the fund could then be compelled to respond thereto and plaintiff could be accorded complete protection to the full extent requested.

3. We recognize that plaintiff under the statutory interpleader provided by § 1335 of Title 28, U.S.C. and Rule 22, Fed.R. Civ.P. may have an interest in the fund and may oppose the contention of claimants to the fund. Here, however, the plaintiff has filed its action as a strict bill of interpleader, alleging that it is merely a stakeholder and has no interest in the distribution of the fund, though it could have filed an action in the nature of a bill of interpleader alleging its interest in the distribution of the fund and in attempting to confine all claimants to a recovery under the 1962 bond. If this latter procedure were followed, however, it would be essential that plaintiff make full disclosure of the entire fund in its hands and assert its interest in the fund that might be hostile to the impleaded claimants. Although the strict requirements of an equitable interpleader would not be fully applicable to a bill in the nature of an interpleader, both actions are still equitable in nature and require that the plaintiff make full disclosure of all relevant facts. For a discussion of the origin and development of interpleader actions, see Klaber v. Maryland Casualty Co., 69 F.2d 934, 106 A.L.R. 617 (8 Cir. 1934); Standard Surety and Casualty Company of New York v. Baker, 105 F.2d 578 (8 Cir. 1939).

Interpleader being a remedy solely for the protection of the stakeholder, it may not be used by the stakeholder as a weapon to defeat recovery from funds other than the one before the court. Nonetheless, plaintiff is seeking to do just that.

Plaintiff is the only party in a position to know the exact bonding arrangement between itself and Layne. No mention, however, is made of the existence of other bonds or the possibility of its liability outside the time limits of the single pleaded bond. If there are other bonds to which claims might be made, the benefit to plaintiff of limiting recovery to the single bond through skillful use of the interpleader is obvious. In attempting to do just that, an interpleader complaint can be worded in such a way that a normal responsive pleading thereto from a claimant unaware of the existence of other funds would arm the plaintiff with an argument that the claimants had committed themselves to seeking relief only under the single pleaded fund. Certainly, a procedure which permits the virtual "trapping" of a claimant is not a proper use of this equitable remedy.

Furthermore, we observe that the Bank and American Home Assurance Company are holding claims that arose from transactions taking place partly in the year that the pleaded bond was in force and partly in a prior year. Not knowing the existence of other bonds and not being able to accurately conclude to which year their claim was applicable, these claimants were faced with a real danger of losing satisfaction on their claims unless they responded, alleging coverage of the pleaded bond and then litigating the issues. If we were to accept plaintiff's position, we would be holding that defendants must assert their claim under the peril that should they be disallowed as not arising in 1962 they will forever be barred from seeking relief under a 1961 bond, if and when such bond is discovered. We do not believe the proper use of an interpleader bill should place claimants in such an inequitable dilemma.

Plaintiff is arguing herein that defendants should have pleaded the 1961 bond in answer to the bill brought by plaintiff in order to avoid limiting their claims to the 1962 bond. Plaintiff has not explained how the claimants were supposed to learn of the existence of the 1961 bond. Plaintiff was the only party with knowledge of its existence, and its papers certainly did nothing to disclose this fact. Even if we assume defendants, in fact, knew of the other bond, the burden should not be placed on them to bring this additional fund into the dispute. As between plaintiff and the fund claimants, the only issue is the right to interplead, while, as between the claimants, the issue is, who is entitled to the fund and in what proportions. The only litigious issue presented between the plaintiff and claimants is the right to compel interpleader. This was done as to the 1962 fund. The plaintiff under its pleadings stands impartial between claimants and cannot urge the claims of certain impleaded defendants against others. As set out in 48 C.J.S. Interpleader § 37, page 89:

> "Claims of defendants against plaintiff cannot be put in issue in the interpleader suit; the amount of the fund or matter in the hands of the complainant, on which hostile claims are alleged to have been made, must be taken to be as stated by the complainant, and cannot be controverted by the answers for the purpose of having it adjudicated * * *."

If plaintiff desired its liability under the other bond settled in this one suit, the burden was upon it to so petition the Court, and deposit the appropriate amount. Plaintiff only demanded litigation of the claims against the 1962 bond, and that is all it is entitled to receive. The law will not allow an interpleader to avoid its liability on funds not pleaded and not before the court by the back door method here urged. Austin v.

295

Texas-Ohio Gas Company, 218 F.2d 739, 745–746 (5 Cir. 1955).

■ The trial court followed the proper course when it discovered that these transactions actually transpired a few days prior to the effective date of the pleaded bond. In all fairness to the other claimants these two claims had to be dismissed. Likewise, in all fairness to the defendants, The Bank of Bellevue and American Home Assurance Company, the claims had to be dismissed without prejudice to their seeking relief from other sources available.

■ Plaintiff's second allegation of error is closely tied with the above discussion. Plaintiff contends the judgment of the District Court deprived it of the benefit of its interpleader. Again, we must disagree. The bill only alleged the 1962 bond of $10,000. The liability and the claim against the bond have been completely settled. Plaintiff is protected by the judgment against any more claims being presented against this particular bond. Plaintiff received all the relief prayed for, as it did not plead bonds other than the 1962 bond and pay into court funds for other years as it is required to do in order to discharge its liability for other years.

As we said above, if plaintiff wanted to resolve all its liability it should have presented the other bond and forced the litigants to resolve their differences concerning the additional bond. Having chosen not to do this, plaintiff must abide by that choice and, therefore, cannot demand protection from suits against these unpleaded funds.

The District Court's order of summary judgment in favor of the plaintiff, accepting the interpleader action and discharging plaintiff from further liability under the policy pleaded, was interlocutory under Rule 54(b), Fed.R.Civ.P. Republic of China v. American Express Co., Inc., 190 F.2d 334, 338–339 (2 Cir. 1951). The experienced Trial Judge correctly, in the interest of justice, confined the final judgment to losses applicable to the 1962 bond, giving plaintiff full protec-

tion on all losses properly applied against that bond, but allowing these defendant-appellees who had losses which originated in a prior year free to pursue whatever remedies that might be available to them.

The judgment in all respects is affirmed.