JOHNSON SERVICE COMPANY, a Wisconsin corporation, Plaintiff,

v.

H. S. KAISER COMPANY, an Illinois corporation, Insurance Company of North America, and Wacholz Heating Co., an Illinois corporation, Defendants.

70 C 2853.

United States District Court,
N. D. Illinois, E. D.

March 26, 1971.

Nathan Grossgold, Ashcraft & Ashcraft, Chicago, Ill., for plaintiff.

Russell, Bridewell & Lapperre, Chicago, Ill., for defendants.

William J. Bauer, U. S. Atty., Chicago, Ill., for the U. S.

## MEMORANDUM OPINION

WILL, District Judge.

The issue presented by this motion for a writ of certiorari is whether the United States of America can remove the instant litigation to this Court from the Circuit Court of Cook County pursuant to 28 U.S.C. § 1446(b) and/or 28 U.S.C. § 1444 and 26 U.S.C. § 7424. For reasons stated below, we conclude that the United States may so remove this action and grant its motion.

Wacholz Heating Company (Wacholz) was a subcontractor working for H. S. Kaiser Company (Kaiser), a general contractor. On December 30, 1963, Wacholz made an assignment of monies due it from Kaiser for the benefit of Johnson Service Company (Johnson). Subsequently, Kaiser became insolvent and the Insurance Company of North America (INA) was required under a certain performance bond to carry out the terms of the assignment since Kaiser was no longer capable of doing so. The United States served INA with a Notice of Levy on or about August 8, 1969, arising from tax liens filed by the government against the defendant Wacholz. This action arose when Johnson filed a complaint against the defendants Wacholz, Kaiser, and INA to obtain those funds held by INA which allegedly were owed to Wacholz and assigned to the plaintiff. The plaintiff believes that it has a right prior to the government to the funds being held by INA and hopes to have its rights adjudicated in this action.

On July 1, 1970, Johnson caused to be served on the United States an amendment to its Amended Complaint which attempted to join the United States as a party defendant pursuant to 28 U.S.C. § 2410.[1] Meanwhile, Wacholz instituted another action in the Circuit Court of Cook County against Johnson, INA, the Chicago Board of Education, and the District Director of the Internal Revenue Service. On July 21, 1970, an order

---

[1] This statute provides, in pertinent part:
"(a) * * * The United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
(1) to quiet title to,
(2) to foreclose a mortgage or other lien upon,
(3) to partition,
(4) to condemn, or
(5) of interpleader or in the nature of interpleader with respect to,
real or personal property on which the United States has or claims a mortgage or other lien."

was entered consolidating these two cases.

In the Circuit Court, the government contended that it was not a proper party defendant to the lawsuit under 28 U.S.C. § 2410 and moved to be dismissed from the action. It simultaneously moved to intervene in the same action pursuant to 26 U.S.C. § 7424.[2] The Circuit Court, apparently faced with no objections to these motions because none of the other parties were concerned with the exact status of the United States in this lawsuit, granted both of the government's motions on October 15, 1970. On November 13, 1970, the United States filed with the Clerk of this Court its petition for removal of said action to this Court pursuant to 28 U.S.C. § 1446(b).[3] The plaintiff, Johnson Service Company, has objected to this petition contending that the removal was not commenced within the thirty day period required by 28 U. S.C. § 1446(b) in that the United States was named as a party defendant on July 1, 1970, and the removal petition was not filed until November 13, 1970. The United States contends that it was never a proper party defendant in the state suit and the case was not therefore removable until its motion to intervene was granted on October 15, 1970. Therefore, it claims, it has in fact filed its removal petition within the statutory thirty day period.

As 28 U.S.C. § 1446(b) requires removal to be accomplished within thirty days from the date of the initial pleading or from the point in time when the action first becomes removable if the original suit is not removable, it becomes crucial for us to determine when this lawsuit became removable. If the government was a proper party defendant under 28 U.S.C. § 2410(a), then the action was first removable on July 1, 1970.[4] If, however, the government was not a proper party defendant, then the case was not removable at that time and was not removable until the United States was granted leave to intervene in the suit pursuant to 26 U.S.C. § 7424[5] on October 15, 1970.

The controlling issue, therefore, becomes whether or not the United States was effectively joined as a defendant by Johnson on July 1, 1970 under 28 U.S.C. § 2410(a). That statute waives the sovereign immunity of the United States and authorizes the naming of it as a defendant in any state court action (1) to quiet title to, (2) to foreclose a mortgage or other lien upon, (3) to partition, (4) to condemn, and (5) of interpleader or in the nature of interpleader with respect to real or personal property on which the United States has or claims a mortgage or other lien. As the plaintiff's suit obviously does not come under the first four subdivisions of Section 2410(a), the only ground under which

---

2. This statute reads, in pertinent part: "If the United States is not a party to a civil action or suit, the United States may intervene in such action or suit to assert any lien arising under this title on the property which is the subject matter of such action or suit. The provisions of (28 U.S.C. § 2410, referred to, supra n. 1) and of (28 U.S.C. § 1444, which authorizes the United States to remove a suit to federal court when it is named as a party pursuant to 28 U.S.C. § 2410) shall apply in any case in which the United States intervenes as if the United States had originally been named a defendant in such action or suit * * * *"

3. This statute reads, in pertinent part: "The petition for removal of a civil action or proceeding shall be filed within

thirty days after the receipt by the defendant * * * of a copy of the initial pleading * * * If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant * * * of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable."

4. 28 U.S.C. § 1444 states: "Any action brought under (28 U.S.C § 2410) against the United States in any state court may be removed by the United States to the district court of the United States * * *"

5. Supra n. 2.

the plaintiff could name the United States as a defendant in this case would be under subdivision (5). The plaintiff claims that its suit does fall under this subdivision in that its suit was in the nature of interpleader.

The statute does not define its terms and no case law exists to indicate what types of suits fall under the statutory subdivision dealing with interpleader suits and suits in the nature of interpleader. In addition, neither the United States nor Johnson refers us to any authority to enable us to determine the precise issue presented, i. e., whether Johnson's suit can be considered as an interpleader suit or a suit in the nature of interpleader.

Prior to 1966, 28 U.S.C. § 2410(a) authorized suit against the United States only in suits attempting to quiet title to or to foreclose a mortgage or other lien upon property over which the United States likewise asserted a claim. However, in the Federal Tax Lien Act of 1966, Pub.L. 89–719, the Congress broadened the government's consent to be sued to include condemnation, partition, and interpleader suits and suits in the nature of interpleader. In so doing, interpleader actions were considered to be " * * * those (suits) brought by persons holding property for the purpose of determining who is entitled to the property held." Senate Report No. 1708, 89th Cong., 2d Sess. (1966), U.S. Code Cong. & Ad.News, pp. 3722, 3755.

 This Congressional definition of interpleader actions is in accord with the traditional definition. The strict bill of interpleader is an ancient and well-established equitable remedy, which was in existence before the enactment of interpleader statutes, and which is maintainable independently of statute under general equity jurisdiction. *See, e. g.,* Standard Surety & Cas. Co. of New York v. Baker, 105 F.2d 578 (8th Cir. 1939). It is the peculiarly applicable remedy where a fund or property owned by, or in the possession of, the complainant is claimed by more than one person.

The purpose of the bill is to compel the various persons who claim the fund or property to state their several claims, so that the court may adjudge to whom the matter or thing in controversy belongs. Great American Insurance Co. v. Bank of Bellevue, 366 F.2d 289 (8th Cir. 1966). The complainant is a disinterested or indifferent stakeholder who simply prays that the hostile claimants be required to cease from troubling him and to settle their dispute among themselves. Strasser v. Commercial Nat. Bank, 157 Neb. 570, 60 N.W.2d 672 (1953), *cf.* United States v. Sentinal Fire Insurance Co., 178 F.2d 217 (5th Cir. 1949). It is clear, therefore, that Johnson's suit is not a strict bill of interpleader because Johnson holds no property whose ownership it is seeking to have determined.

As Johnson's suit is not an interpleader action, the naming of the United States as a party defendant pursuant to Section 2410(a), then, was effective only if Johnson's suit can be considered to be in the nature of an interpleader action. Johnson contends that its suit is in fact in the nature of a bill of interpleader. It claims that INA believed that Johnson had a right superior to that of the government to the funds in its possession and that it was faced with the traditional dilemma of a person who brings a bill of interpleader: it did not know to whom the money should be paid although it knew that it must be paid to either Johnson or the United States. Thus, it would have been appropriate for INA to solicit the aid of a state court by way of an interpleader action. However, Johnson alleges, rather than directly commencing the action with the incidental expenses thus entailed, INA requested Johnson to file a chancery suit in which plaintiff would seek the court's ruling that it was entitled to the funds. Johnson accordingly filed the state court suit presently involved. Thus, Johnson argues, its suit was in the nature of an interpleader action even though it was not commenced by the stakeholder as a party plaintiff.

In the Congressional reports which defined interpleader, *supra*, no mention or definition was made that would indicate what types of suits Congress intended the phrase "suits in the nature of interpleader" to cover. We, therefore, must decide what Congress' intent was in its use of that phrase and whether Johnson's suit falls within that definition.

■ In interpreting a statute, courts are not free to reject the literal or usual meaning of a word or phrase unless such an adoption would lead to absurd results. Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303 (1941). In matters of statutory construction, a court's first duty is to give effect to the intent of Congress; and in so doing the court's first reference is to the literal meaning of the words employed. Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958). And where, as here, a statute does not define a term having a common law meaning, the common law concept thereof controls. Leyerly v. United States, 162 F.2d 79 (10th Cir. 1947). We therefore must determine the general and accepted common law meaning of suits in the nature of interpleader, attribute that meaning to 28 U.S.C. § 2410(a) (5), and apply such construction to the instant suit.

As discussed above, a bill of interpleader can be characterized by the fact that the plaintiff has no interest in the property in question and merely desires a court resolution of conflicting claims to that property. In order that a person may maintain a strict bill of interpleader, he must be indifferent between the conflicting claims. Central Montana Stockyards v. Fraser, 133 Mont. 168, 320 P.2d 981 (1957); Case v. De Woskin, 329 Ill.App. 416, 69 N.E.2d 183 (1946); Heinrich v. South Side Nat. Bank in St. Louis, 363 Mo. 220, 250 S.W.2d 345 (1945).

■■ A bill in the nature of interpleader, however, is distinguished from the strict bill in that the complainant need not be without interest in the subject matter claimed by two or more persons and he may seek some affirmative equitable relief. W. A. Ross Const. Co. v. Chiles, 344 Mo. 1084, 130 S.W.2d 524 (1939); Simon v. Raleigh City Bd. of Ed., 258 N.C. 381, 128 S.E.2d 785 (1963). Thus, although personal interest deprives a complainant of the right to a strict bill of interpleader, it does not defeat the right to a bill in the nature of interpleader. Where there are two or more claimants to the fund or property, complainant may have recourse to a bill in the nature of interpleader to ascertain and establish his own rights, even though, at the same time, he seeks to defeat all of the claims against himself. State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); MFA Mutual Ins. Co. v. Lusby, 295 F.Supp. 660 (W.D.Va.1969); 3A Moore, Federal Practice, Para. 22.03, p. 3006.

Aside from the distinction as to the interest of the plaintiff, a bill in the nature of a bill of interpleader and a bill of interpleader are governed by the same general principles. W. A. Ross Const. Co. v. Chiles, *supra*. A typical example where a strict bill of interpleader would be appropriate would be the case of an insurance company which recognizes that it owes money on a policy, but is uncertain to whom it should be paid. If the insurance company contended that it did not owe any money on the policy, but was unsure to whom it should be paid if it was in fact liable, its suit would be a bill in the nature of interpleader because its suit would have all the characteristics of a strict bill of interpleader with the exception of the fact that it sought to defeat all the claims against itself.

The above discussion concerning the characteristics of bills of interpleader and bills in the nature of interpleader indicates that Johnson's suit does not fall within either of these categories for the precise reason that it possesses no property about which it is in doubt as to the true ownership. Although INA could have brought a strict bill of in-

terpleader, Johnson's suit is not such a bill nor is it a bill in the nature of interpleader notwithstanding that its suit may be similar in purpose to such bills.

Because we conclude that Johnson's suit was neither a bill of interpleader nor a bill in the nature of interpleader, we further conclude that Johnson was incapable of effectively joining the United States as a defendant in its suit pursuant to 28 U.S.C. § 2410(a). Therefore, had the United States attempted to remove the action after it had been improperly and ineffectively joined as a defendant, this Court would have had to remand the cause to the state court because:

> "As has been frequently stated, the jurisdiction of the federal court on removal is a derivative jurisdiction, and if the state court lacks jurisdiction either of the subject matter or of the parties, the federal court acquires none upon removal." Block v. Block, 196 F.2d 930 (7th Cir. 1952).

█ Because the United States was not effectively joined as a party defendant on July 1, 1970, the case was not removable at that time. It did not become removable until the government had intervened in the suit on October 15, 1970, pursuant to 26 U.S.C. § 7424. As the government in fact removed the instant litigation within the statutory thirty day period which began running at that date, this cause has been properly and effectively removed to this Court.

We recognize that the net effect of our allowing removal is that this cause will now be beginning anew its journey through court processes towards final resolution, some eight and a half months after the government was first served in the state court action and after the state judge who has been handling this case has had the benefit of numerous conferences with representatives of the parties and has already adjudicated various facets of this litigation. We acknowledge that the removal statutes were designed to insure an orderly and swift determination of cases initially commenced in the state courts, while assuring the government the opportunity to seek what it feels is its proper forum. However, the delay occurring in this case cannot be avoided when the parties have erred in their joining of other parties and when the effect of this mistake has been exacerbated and magnified by the government's failure expeditiously to correct this mislabeling and to intervene as it is statutorily authorized to do in a suit in which it knew that it desired to remain. There is nothing, however, that the federal courts can do to impose orderly and swift determination of cases so long as Congress authorizes the United States to intervene at any time in state suits to which it is not otherwise a party. In the instant litigation, the United States has met its burden for removal by filing its petition therefor within thirty days after it properly intervened. Once we have made this determination, we cannot take into account that the government perhaps could have acted more expeditiously by intervening at an earlier date into the state suit in which it knew it wanted to be a party and in which it was already labeled as a party, albeit erroneously.

An order will enter granting the motion of the United States.