Ernest Ray BRINSON and Laura Brinson Morris, Plaintiffs, and Metropolitan Life Insurance Company, Defendant, Appellees,

v.

Clara BRINSON, also known as Clara Landers, Third-Party Defendant, Appellant.

No. 9335.

United States Court of Appeals Fourth Circuit.

Argued April 28, 1964.

Decided June 16, 1964.

Stanley E. Sacks, Norfolk, Va. (Sacks, Sacks & Kendall, Norfolk, Va., on brief), for appellant.

Bernard B. Hollowell, Bayboro, N. C. (Raymond E. Dunn, New Bern, N. C., on brief), for appellees.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

Appellant, Clara Brinson, appeals, from the district court's denial of her motion for summary judgment and entry of summary judgment in favor of appellees, Ernest Ray Brinson, Laura Brinson Morris, and Metropolitan Life Insurance Company [hereinafter Metropolitan].

At issue is whether the district court properly held, as a matter of law, that Clara Brinson did not qualify as the widow of deceased insured, Ernest Brinson, and therefore was not entitled to the proceeds of a $7,000.00 insurance policy issued by Metropolitan pursuant to the Federal Employees' Group Life Insurance Act[1] on Ernest Brinson's life.

The following basic facts are undisputed. Ernest Brinson and Clara Brinson (née Gaskill) were legally married in Pamlico County, North Carolina, on June 3, 1934. From the union were born two children; Ernest Ray Brinson and Laura Brinson. Sometime after the birth of their children, the Brinsons left North Carolina and moved to Virginia. The marriage did not prosper, and on February 26, 1945, Ernest Brinson obtained a divorce decree *a mensa et thoro* from the Circuit Court of Norfolk County, Virginia, adjudicating the fact of Clara Brinson's desertion on October 6, 1944, and awarding him custody of the children. After the decree was entered Ernest Brinson and the children returned to North Carolina. Upon his return, Ernest Brinson accepted a job with the United States Government and in connection with his employment acquired the Metropolitan life insurance policy here in issue. Clara Brinson remained in Virginia, and on September 27, 1947, she and Paul Willis Landers applied to the Clerk of the Corporation Court of Norfolk County, Virginia, for a marriage license. The license was issued and the marriage ceremony performed on October 3, 1947. Ernest Brinson, who had never remarried, died on June 7, 1961, some thirteen years after Clara Brinson's second marriage. Ernest Brinson died without having designated any named beneficiaries under the policy.

The Federal Employees' Group Life Insurance Act[2] provides for the following priority of payments:

"First, to the beneficiary or beneficiaries as the employee may have designated by a writing received in the employing office prior to death;

"Second, if there be no such beneficiary, to the widow or widower of such employee;

"Third, if none of the above, to the child or children of such employee and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such employee or the survivor of them;

"Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such employee;

"Sixth, *if none* of the above, to other next of kin of such employee entitled under the law of domicile of such employee at the time of his death."

On the basis of the third provision of the statute, Ernest Ray Brinson and Laura Brinson Morris filed an action in the United States District Court for the Eastern District of North Carolina. Their complaint alleged in substance that their father, as insured under the policy, had failed to designate named beneficiaries, that he had died without leaving a widow, and that because of these facts they were entitled to the insurance proceeds. At approximately the same time Clara Brinson filed an action in the United States District Court for the Eastern District of Virginia, alleging that under the second provision of the statute she was the widow of Ernest Brinson and was entitled to recover the proceeds. Thereafter, Metropolitan, admitting liability to either Ernest Brinson's widow or his children, but not both, deposited the face amount of the policy, together with interest due, with the Registry of the District Court at New Bern, North Carolina, and interpleaded Clara Brinson as party defendant in the North Carolina forum. The Virginia District Court transferred the suit between Clara Brinson and Metropolitan to the Eastern District of North Caro-

---

1. 5 U.S.C.A. §§ 2091–2103 (Supp.1954).

2. 5 U.S.C.A. § 2093 (Supp.1954).

lina. With all interested parties before it, the North Carolina District Court, after considering certain stipulated exhibits and facts, determined, as a matter of law, that Clara Brinson was not the widow of Ernest Brinson within contemplation of the statute and hence, was not entitled to the insurance proceeds. It thereupon entered summary judgment in favor of Ernest Ray Brinson and Laura Brinson Morris, and from that judgment Clara Brinson appeals.

Clara Brinson advances two principal arguments before this court: (1) that the divorce decree *a mensa et thoro* awarded Ernest Brinson had no effect on her right to recover insurance proceeds as his widow, and (2) that her marriage to Paul Willis Landers was entered into under the honest, but mistaken belief that the divorce was absolute and that, therefore, her actions were not so unconscionable as to stay the hand of a court of equity from acting on her behalf.

■ Preliminarily we find proper federal jurisdiction under the provisions of the federal interpleader statute;[3] the value of the policy is in excess of the statutory minimum; and diversity of citizenship exists among adverse claimants. See Haynes v. Felder, 239 F.2d 868 (5 Cir. 1957).

■ Turning to Clara Brinson's arguments we are faced at the onset with a choice of law problem. Under the Federal Employees' Group Life Insurance Act,[4] the Government is empowered to procure insurance on behalf of its employees from private insurance carriers. In this activity, the Government acts not as an insurer, but as the procuring agent. Railsback v. United States, 181 F.Supp. 765 (D.Neb.1960). Thus, in the instant case the contract of insurance existed between Ernest Brinson and Metropolitan. The insurance policy, setting forth the terms and conditions of that insurance contract, provided for a

priority of payments of death benefits in accordance with provisions in the Act, but did not define the term widow. The Ninth Circuit in Tatum v. Tatum, 241 F.2d 401 (9 Cir. 1957), considered this hiatus and by looking to judicial interpretations of an analogous federal statute, the National Service Life Insurance Act,[5] determined that the term *widow* meant *lawful widow*. In the absence of a congressional pronouncement on the meaning of lawful widow, the court held that it had to look to state law. Faced with three possible states to look to, the court declined to take the final step and decide which of the three state laws governed. The court declined for the reason that the law of all three states was in substance the same. In a case also involving the Federal Employees' Group Life Insurance Act, the Fourth Circuit has taken the final step and has held that the law of an insured's domicile at the time of his death governs. Grove v. Metropolitan Life Insurance Co., 271 F. 2d 918 (4 Cir. 1959). This resolution of the choice of law problem seems especially appropriate in the present case. Ernest Brinson accepted government employment in North Carolina, the insurance contract was entered into in North Carolina, and it was in North Carolina that he died. Surely North Carolina's interest is obvious in these circumstances and the District Court, sitting in North Carolina, should defer to the law of that state. See Brantley v. Skeens, 105 U.S. App.D.C. 246, 266 F.2d 447 (1959).

But granting that we defer to the law of North Carolina, we find that the statutes of North Carolina have no precise definition of widow, nor have the courts supplied a definition under the factual situation involved in the present dispute.

While it is true that a divorce decree *a mensa et thoro* does not technically dissolve the bonds of matrimony, nevertheless, the contingent marital rights of a wife separated from her husband un-

**3.** 28 U.S.C.A. § 1335 (1948).

**4.** 5 U.S.C.A. §§ 2091–2103 (Supp.1954).

**5.** 38 U.S.C.A. § 701(2) (1958).

der such a divorce decree have been curtailed by a North Carolina statute N.C. Gen.Stat. § 52–20 (1949) provides that:

> "If a married woman elopes with an adulterer, or willfully and without just cause abandons her husband and refuses to live with him, and is not living with her husband at his death, or if a divorce from bed and board is granted on the application of the husband, she shall thereby lose all right to dower in the lands and tenements of her husband, and also all right to a year's provision, and to a distributive share from the personal property of her husband, and all right to administration on his estate, and also all right and estate in the property of her husband, settled upon her upon the sole consideration of the marriage, before or after marriage; and such elopement may be pleaded in bar of any action, or proceeding, for the recovery of such rights and estates; and in case of such elopement, abandonment, or divorce, the husband may sell and convey his real estate as if he were unmarried, and the wife shall thereafter be barred of all claim and right of dower therein."

█ But Clara Brinson argues that the above quoted statute misses the mark, that it was passed as an attempt to foreclose a woman's sharing in her husband's estate when she had committed certain acts, specifically enumerated in the statute, and that it has no application to her claim to property outside her husband's estate. She maintains that she seeks no part of Ernest Brinson's estate, but rather that she is the beneficiary of a contract of insurance between Metropolitan and Ernest Brinson which was in effect at his death. We note, however, that N.C.Gen.Stat. § 31–A (1961), entitled Acts Barring Property Rights,[7] successor statute to N.C.Gen.Stat. § 52–20 (1949), states that: "This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong." N.C.Gen.Stat. § 31A–15 (1961). This statement is merely a codification of a pre-existing state policy, which was in effect at the date of Ernest Brinson's death, and it is entirely consistent with this policy to hold Clara Brinson is equitably barred from the insurance proceeds under N.C.Gen.Stat. § 52–20 (1959).[8]

But apart from the effect of the statute, we feel there is another and more substantial basis, resting on equitable principles, which requires us to affirm the judgment below. Clara Brinson takes the position that her bigamous marriage to Paul Willis Landers was entered into under such innocent circumstances that it should not prevent a court of equity from granting her equitable relief. In effect she contends that the "clean hands" doctrine has no application to the facts at bar. We must disagree, especially in view of the unequivocal finding of Clara Brinson's desertion by the Virginia court in awarding a divorce decree *a mensa et thoro* and custody of the children to Ernest Brinson.

█ The order of the North Carolina District Court, interpleading Clara Brinson and staying all other suits by her transformed the action into an equitable proceeding which was to be governed by equitable principles. Texas v.

---

7. See generally Bolich, *Acts Barring Property Rights* 40 N.C.L.REV. 175, 181 (1962), wherein both the new statute and its predecessors are discussed.

8. It has been universally recognized that certain wrongful acts by a spouse, even absent statute, prevent that spouse from profiting from his or her wrongdoing. Thus, a spouse committing homicide may not enjoy the insurance proceeds which would ordinarily accrue to him or her as surviving spouse. This principle of common law was recognized in North Carolina in Anderson v. Life Ins. Co. of Virginia, 152 N.C. 1, 67 S.E. 53 (1910). See also the discussion in Life Ins. Co. of Virginia v. Cashatt, 206 F.Supp. 410 (E.D.Va.1962), which involved this common law principle in Virginia.

Florida, 306 U.S. 398 (1939); Brantley v. Skeens, 105 U.S.App.D.C. 246, 266 F.2d 447 (1959); Burchfield v. Bevans, 242 F.2d 239 (10 Cir. 1957).

Viewed in this context, we find the D.C. Circuit case of Brantley v. Skeens, 105 U.S.App.D.C. 246, 266 F.2d 447 (1959), enlightening. That case was also an equitable proceeding involving competing claims for the proceeds of an insurance policy issued pursuant to the Federal Employees Group Life Insurance Act in which the insured had failed to designate named beneficiaries. Willie Brantley claimed the proceeds of the insurance policy issued on the life of Elizabeth Brantley as her widower. Willie and Elizabeth Brantley had been married, but had separated, without either ever having obtained a divorce of any kind. Brantley later remarried, and in order to obtain a marriage license had sworn before a Notary Public that he possessed the legal capacity to marry. The lower court disallowed his claim to the insurance proceeds and the Court of Appeals affirmed, stating:

"In Brantley's motion for summary judgment he was, in effect, asking the District Court to disregard this second marriage and to consider his ten-year adulterous association with Sarah Gadsen as a mere meretricious escapade. The District Court was unwilling, under equitable principles, to do this.

"Those opposing Brantley's motion relied on the presumption that his second marriage was presumptively valid. Brantley attempts to overcome this presumption in part by conceding, in effect, that he falsely swore that he was capacitated to marry, and that his entire cohabitation with Sarah Gadsen was illegal. Thus, in effect, Brantley's motion is predicated on both perjury and bigamy. We think his claim must be denied because of the clean hands doctrine." 266 F.2d at 452.

In reaching the result, the court relied on a Fourth Circuit decision, Mas v. Coca-Cola Co., 163 F.2d 505 (4 Cir. 1947), wherein we stated:

"Although most cases in which the clean hands doctrine has been applied are cases in which the cause of action itself has arisen out of or been the fruit of unconscionable conduct, we do not understand that it is a prerequisite to the application of the doctrine that the cause of action shall have so arisen. It is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, such as the fabrication of testimony, the subornation of perjury or other like attempt to perpetrate a fraud upon the court or take an unconscionable advantage of his adversary." 163 F.2d at 508.

■ Clara Brinson seeks to distinguish the Brantley case on the ground that she had been mistaken as to the effect of a divorce decree *a mensa et thoro*, thinking that it permitted her to remarry. It is understandable that the contention was difficult for the trial court to accept when one considers that Clara Brinson had been represented by counsel in the divorce proceedings in 1947. In addition she seeks to play the role of widow to a man she has been judicially found to have deserted in a contested divorce case and to supersede the children who were by the court awarded to that man and not to her. Certainly the district court was not clearly erroneous in holding that under principles of equity Clara Brinson is barred in the factual context of this case from recovering the proceeds of the Metropolitan life insurance policy as the lawful widow of the deceased.

■ The action of the district court in granting summary judgment was especially appropriate here—faced as it was with a motion and countermotion for summary judgment, wherein all parties admitted to undisputed facts and

sought a declaration of the law. See 3 BARRON AND HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE, § 1231 (Wright ed. 1958). The judgment is therefore

Affirmed.