Robert MANNING, Jr., Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Counterclaimant,

v.

Robert MANNING, Jr., et al., Counterclaim Defendants.

Civ. A. No. 19800.

United States District Court, D. Maryland.

Aug. 31, 1971.

4. The time has long since passed when a remedy in the nature of an administrative hearing might be adequate.

Archibald Eccleston, III, James A. Ostendorf, and Edwin J. Wolf, Baltimore, Md., for plaintiff and counterclaim defendant.

Lawrence F. Rodowsky, Baltimore, Md., for Prudential Ins. Co. of America, defendant and counter-claimant.

John O. Herrmann, Baltimore, Md., for Rachel McMillian Nelson, counterclaim defendant.

Charles E. Chlan, Baltimore, Md., for Mary Ann Thompson McMillian, counterclaim defendant.

NORTHROP, Chief Judge.

This is an action in which various persons, all of whom profess to enjoy a degree of relationship to the deceased, a serviceman killed in action on March 5, 1968, claim the proceeds (since paid into court) of a $10,000 term policy written by The Prudential as contract insurer under the Serviceman's Group Life Insurance Act, 38 U.S.C. § 765 et seq. After tracing the kinship of the claimants through a labyrinth of meritricious relationships reminiscent of those of the court of Charles II, we have ascertained with some degree of certainty the relationships of the claimants to the deceased and their relationships *inter se*, as follows:

*Robert Manning* is the father of deceased, deceased being his illegitimate child.

*Rachel McMillian Nelson* is the mother of deceased and mother of

*James Douglass McMillian* and *Joseph Lee McMillian*, the father of both of whom may or may not be Robert Manning, thus making them either half or full brothers of deceased.

*Mary Ann Thompson "McMillian" Sprangle*, although never married at all to deceased, is undoubtedly the mother of

*Freda Michelle Thompson*, who, we find as a fact, is the illegitimate daughter, born August 26, 1965, of deceased and Mary Ann Thompson "McMillian" Sprangle.

The case in its present posture has essentially been narrowed to a controversy over the $10,000 fund between Rachel McMillian Nelson, mother of deceased, and Freda Michelle Thompson, who, we have found as a fact, was the illegitimate daughter of deceased.

The question upon which the entire case turns is the proper interpretation to be given to the word "child" as used in the statutory scheme set up *solely* for the purpose of determining to whom the proceeds of an SGLI policy are to be paid in case the deceased soldier fails, as did the late Robert McMillian, to name a beneficiary on the form (DA Form 3054) provided for such purpose, but instead merely checks the block on said form marked "My desires, with respect to beneficiaries, are: ☒ Have payments made in the order of precedence set forth in the law." [1] The applicable statute, 38 U.S.C. § 770(a), provides:

Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received in the uniformed services prior to such death;

---

[1] Interestingly enough, "the law" is recited on DA Form 3054, just above the block referred to, as providing that "payment will devolve in the following order: To my wife, children in equal shares, and parents in equal shares."

Second, if there be no such beneficiary, to the widow or widower of such member or former member;

Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

Fourth, if none of the above, to the parents of such member or former member or the survivor of them; * * *.

As the only claims to the fund now pressed are those asserted by the mother of deceased [hereinafter referred to as the mother claimant] and by the illegitimate daughter of deceased [hereinafter referred to as the daughter claimant], the sole issue presented for our determination is whether or not the word "child" as used in § 770(a) includes within its scope illegitimate children, or whether it includes only legitimate children of a deceased serviceman.

■ At the outset, it is contended by counsel for the daughter claimant that even if illegitimate children were excluded under § 770(a), the mother claimant in this case could not take the proceeds because she abandoned deceased when he was an infant. Even if we were satisfied that, as a factual matter, said abandonment had occurred, we do not think that the fact that the mother claimant would be barred from her rights to *intestate succession* in deceased's property by virtue of North Carolina General Statutes § 31A–2 can be said to override the congressional command in § 770(a) that parents take the SGLI proceeds if there be no child of deceased surviving him.[2]

■ It is contended by counsel for the mother claimant that reference must be made to North Carolina law (North Carolina having been the domicile of deceased) in order to determine whether, in the circumstances of this case, the daughter claimant can take the proceeds. It is argued that she cannot so take because of the "rule" (which was, in point

of fact, dictum) in the case of Jolly v. Queen, 264 N.C. 711, 142 S.E.2d 592 (1965), which, we shall assume, establishes as a proposition of North Carolina law that an illegitimate child cannot inherit property by intestate succession from its father. Assuming that this is, indeed, North Carolina law, it is obvious that this proposition would not *control* the distribution of the policy proceeds in this case, even if we felt constrained to apply North Carolina law *in toto* to the problem at hand, simply because the proceeds here do not pass by intestacy, but pass, rather, according to a federal statutory scheme wholly independent of the laws of intestate succession of any state.

But, it is argued, the fact that an illegitimate child cannot take by intestacy from its father under North Carolina law, should constrain us to *define* the word "child" in § 770(a) as excluding an illegitimate child. The problem with this contention is that a reference to the North Carolina law of intestate succession does not *define* anything, but results merely in a *cul-de-sac* of reasoning which ends with a North Carolina rule which expounds merely certain legal *rights* of illegitimates rather than providing any helpful clue to the definition of child under § 770(a).

Thus, where shall we turn to find the definition we are seeking? The sole case which we have found which considers a similar definitional problem under § 770(a) (who is a *parent?*), Nunn v. Nunn, 81 N.M. 746, 473 P.2d 360 (1970), is of little help and merely recites the ancient maxim that statutory words are presumed to be used in their ordinary and usual sense. We are aware that at common law the legal definition of "child" comprehended only legitimate children. However, the more modern trend has been to expand the definition to include illegitimate children, especially when the word is used in a statute, such as § 770(a), which evinces on its face some purpose to provide a measure

2. See Johnson v. Prudential Ins. Co. of America, 182 Neb. 673, 156 N.W.2d 812 (1968) as to the supremacy of the § 770 scheme over state law.

of *support* for persons dependent upon deceased for support. The statutory scheme in a case such as this is different from that of the law of intestate succession, as can be seen from the fact that under § 770(a) the widow is first provided for, and, then, if there be no widow, the children, as contrasted with ordinary schemes of intestate succession in which the widow and the children receive some tangible share of property contemporaneously and not to the exclusion of one another. In North Carolina, as in many other states, the father of an illegitimate child has a statutory duty to support that child. General Statutes of North Carolina, § 49–2. Hence, we feel it would accord with the support-oriented scheme of § 770(a) to include illegitimate children in the definition of "child" in that section.

The case of Yellow Cab Co. v. Industrial Commission, 42 Ill.2d 226, 247 N.E. 2d 601 (1969), is instructive in this regard. In that case, the sole question to be determined was whether an illegitimate child could recover under the Illinois Workmen's Compensation Act. In broadening the ancient definition of "child" to include illegitimate children, the court, relying, *inter alia*, upon the statutory duty of a father to support an illegitimate child, stated: "[T]he harsh doctrines of the common law relating to the rights of illegitimate children, and the underlying social attitudes which produced these doctrines have yielded to more enlightened judicial and legislative action." 247 N.E.2d 601, 603. We agree.

In addressing the same definitional problem under federal statutes authorizing recovery for wrongful death on the high seas, the Court said in Middleton v. Luckenbach SS Co., 70 F.2d 326 (2d Cir. 1934), cert. denied 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674:

There is no right of inheritance involved here. It is a statute that confers recovery upon dependents, not for the benefit of an estate, but for those who by our standards are legally or morally entitled to support. Humane considerations and the realization that children are such no matter what their origin alone might compel us to the conclusion that, under present day conditions, our social attitude warrants a construction different from that of the early English view. * * * The rule that a bastard is nullius filius applies only in cases of inheritance.

70 F.2d 326, 330.

There is nothing in the case of DeSylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), which changes our opinion. That case dealt with the right of an illegitimate child to renew copyrights held by his father, and the Court applied state law delimiting the *rights* of illegitimate children in a situation which was clearly stated by the Court to be closely akin to an *inheritance* problem:

Since the author cannot assign his family's renewal rights, § 24 takes the form of a compulsory bequest of the copyright to the designated persons. This is really a question of the descent of property, and we think the controlling question under state law should be whether the child would be an heir of the author.

351 U.S. 570, 582, 76 S.Ct. 974, 981.

It is interesting to note that the concurring opinion in *DeSylva* of Mr. Justice Douglas, with whom Mr. Justice Black joined, adopts totally the salutary reasoning in Middleton v. Luckenbach, *supra,* even though the dependency-support purpose of § 24 of the Copyright Act is not nearly so evident as that of the maritime wrongful death statutes in *Middleton* nor as that in the instant case.

For the reasons stated above, it is the opinion of this Court that the proceeds of the SGLI policy here in controversy are to be paid to the daughter claimant, Freda Michelle Thompson. Her counsel will submit an order and provide therein for payment of the fund to a trustee to hold for the benefit of the daughter claimant.