LOUIS MANGENE, SR. *v.* AETNA LIFE INSURANCE COMPANY ET AL.

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE NO. 110011

Memorandum filed November 8, 1974

*Spada, Vinkels & Kristofak,* of Hartford, for the plaintiff.

*Day, Berry & Howard,* of Hartford, for the named defendant.

*Kuehn, Cavanaugh & Cummings,* of West Hartford, for the defendant John Mangene.

BIELUCH, J.   On August 1, 1967, the defendant Aetna Life Insurance Company issued a group policy insuring the life of Louis Victor Mangene, son of the plaintiff and brother of the defendant John Mangene, in the amount of $10,000.   The insured died on October 28, 1971, without designating a beneficiary to these proceeds and leaving no wife and no children surviving.   The policy provides for the following priority of payments:   "If no designated beneficiary survives the employee, or if no beneficiary has been designated, payment shall be made to the employee's widow or widower, if surviving the employee; if not surviving the employee, equal shares to the employee's children who survive the employee; if none survive the employee, to the employee's parents, equally, or to the survivor; if neither survive the employee, in equal shares to the employee's brothers and sisters who survive the employee; or if none survive the employee, to the employee's executors or administrators."   On March 10, 1972, the defendant Aetna Life Insurance Company made payment under the policy to the defendant John Mangene as surviving brother.

The plaintiff, claiming to be a preferential beneficiary under the terms of the insurance policy as surviving parent, has brought this action in two counts, the first against the defendant Aetna Life Insurance Company and the second against the defendant John Mangene, to recover the death benefits due and paid thereunder.   The defendants allege

in their second special defense that the plaintiff "abandoned the deceased and his family on or about 1937, renounced his relationship as father and his responsibilities of fatherhood, and has never since acted as or resumed the duties and obligations of being father, and, therefore, is not entitled to any benefits by way of now claiming to be the father of the deceased, Louis Victor Mangene." The plaintiff has demurred to this special defense, claiming that (1) it violates the parol evidence rule by varying the plain written terms of the contract upon which this action is brought, and (2) it is irrelevant to the plaintiff's cause of action.

I

The parol evidence rule is not a rule of evidence but one of substantive law. *Panaroni* v. *Johnson,* 158 Conn. 92, 106. When applicable, it defines the limits of a contract. *Cohn* v. *Dunn,* 111 Conn. 342, 346. A written agreement may conclude the parties to it. It may, as between them, exclude all parol evidence to contradict, vary, or materially affect it, by way of explanation; but a stranger is not estopped by the agreement. He is always permitted to adduce parol testimony to prevent a fraudulent operation of the agreement upon his interests. *Johnson* v. *Blackman,* 11 Conn. 342, 352. " 'And where the stranger to the instrument is thus free to vary or contradict it by parol evidence his adversary, although a party to the instrument, must be equally free to do so. This has been held to be true with reference to writings of all kinds, as for example, deeds; mortgages; leases; bills of sale; contracts of sale; licenses; insurance policies, and contractual receipts.' " *Bowman* v. *Tax Commission,* 135 Ohio St. 295, 301, quoting 22 C.J. 1293, § 1725. The rule that written agreements cannot be varied by parol operates, however, in favor of those not parties to the instrument as fully as in favor of

those who were parties to it, whenever it was executed by the latter as the final embodiment of their agreement, and the parol evidence is offered to vary the legal effect of the terms in which it is expressed. *Allen* v. *Ruland,* 79 Conn. 405, 412. In *Allen,* the court ruled that parol evidence was not admissible to vary a general release given to a joint tort-feasor when offered for the purpose of negating the discharge by operation of law of another joint tort-feasor not a party to the release.

The rule that parol evidence is not admissible to contradict or vary a written instrument has for its object the prevention of fraud and perjury in those cases where the parties have put their contract in writing, by excluding evidence of the terms of the contract other than the writing itself, but any relation, antecedent agreement, or state of facts from which a controlling equity arises may be pleaded and proved by parol in such exceptional cases, even between the original parties. See *Choolgian* v. *Nordstrom,* 111 Conn. 572, 574-75.

The plaintiff in this action was not a party to the insurance agreement between the defendant Aetna Life Insurance Company and the decedent. Further, the special defense alleges facts claiming an equitable exception to the parol evidence rule. For these reasons, the demurrer on the ground that the defendants' second special defense violates the parol evidence rule cannot be sustained.

## II

This is a case of first impression. The issue between the parties arises from the failure of the insurance policy to define the term "parent" in its priority of payments of death benefits clause. Counsel in their briefs are unable to cite helpful authorities. The defendants incorrectly rely on *Gibbs* v. *United States,* 80 F. Sup. 907, to support their claim

that a natural father may be denied insurance proceeds because of his failure to accept fully the duties of a parent. In *Gibbs,* a putative father of an illegitimate child made claim under a national service life policy in which he was named principal beneficiary and designated as "father" of the insured serviceman. The court denied his claim and awarded the death benefits to the contingent beneficiary, the decedent's half brother, for the reason that the claimant did not occupy the relationship of "in loco parentis" to the insured under the provisions of the National Service Life Insurance Act of 1940, 54 Stat. 1008, as amended, and the relevant definitive regulations of the veterans' administration.

The case most closely approaching the facts and issue now before the court is *Brinson* v. *Brinson,* 334 F.2d 155, decided by the United States Court of Appeals for the Fourth Circuit. In that interpleader action the court had to determine whether a woman qualified as the widow of a government employee and was, therefore, entitled to the proceeds of a policy issued by the Metropolitan Life Insurance Company pursuant to the Federal Employees' Group Life Insurance Act of 1954. 68 Stat. 736. That insurance contract, like the policy now under consideration, established a priority of payments of death benefits in accordance with provisions in the act but did not define the term "widow." The District Court had denied Mrs. Brinson's claim, granting summary judgment in favor of the children. The facts in *Brinson* are important in measuring its thrust on the present case. The decedent and Clara Brinson were legally married and had two children, the other claimants under the policy. Thereafter the insured obtained a divorce decree a mensa et thoro, that is, from bed and board, adjudicating the fact of his wife's desertion and

awarding him custody of the children. Subsequently, Clara Brinson entered into a bigamous marriage. Thirteen years later, Ernest Brinson died without any designation of beneficiaries under his group policy.

Since, in *Brinson* v. *Brinson,* supra, the insurance contract and its enabling legislation failed to define the word "widow," the court held that it had to look to state law. The statutes of North Carolina offered no precise meaning of widow, nor was there a judicial definition under the factual situation being considered. The court did, however, find a helpful interpretive equitable definition of widow in the law barring property rights to women because of certain marital infractions. The court noted that while it was true that a divorce decree a mensa et thoro did not technically dissolve a marriage, nevertheless the marital rights of a wife separated from her husband under such a divorce decree were curtailed by a law which, like § 46-12 of the Connecticut General Statutes, denied to a woman who abandoned her husband without just cause, or who was divorced from bed and board on his application, all right to dower, personal property and support from his estate after death. In answer to the argument that the statute had no application to Mrs. Brinson's claim as beneficiary of an insurance contract, being property outside her husband's estate, the court ruled (p. 159) that the statute was an expression of the state's policy that no person shall be allowed to profit by his own wrong and that "it is entirely consistent with this policy to hold Clara Brinson is equitably barred from the insurance proceeds" under this law.

Notwithstanding its reliance on the disinheritance statute, the court, in *Brinson* v. *Brinson,* supra, 159, went still further to what it called a "more substantial basis, resting on equitable principles, . . . the

'clean hands' doctrine," in affirming the summary judgment. Disallowing Mrs. Brinson's claim that the bigamous marriage resulted from a mistake as to the effect of a divorce decree a mensa et thoro because she had been represented by counsel, the court observed (p. 160) that she was now seeking "to play the role of widow to a man she has been judicially found to have deserted in a contested divorce case and to supersede the children who were by the court awarded to that man and not to her."

*Brinson* v. *Brinson,* supra, does not reach the factual or legal context now before the court. The child welfare laws, chapter 301 of the General Statutes, define parent to mean "natural or adoptive parent." § 17-32a (b). The plaintiff qualifies for the claimed relationship of sole parent within this meaning. Moreover, "[t]ermination of parental rights" means "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent, except as provided in section 17-43a [termination of parental rights over child committed to welfare commissioner]." § 17-32a (e). The defendants in their second special defense allege no such termination of the plaintiff's parental rights. Section 45-276 provides for distribution to parents of intestate estates of children leaving no children or representatives of them. There is no parental disinheritance by law for the abandonment of a child comparable to the provisions of the North Carolina statute cited in *Brinson* v. *Brinson,* supra, or of our § 46-12, disqualifying a spouse for abandonment of a wife or husband. The only legal bar imposed by our statutes for the abandonment of a child by a parent is to be found in § 17-326, which frees a child from liability for the reciprocal support of a parent who wilfully deserted the child continuously during the ten-year period prior to the child's reaching

his majority. On the other hand, the abandonment or desertion of a minor child by a parent does not relieve the latter of the statutory obligation to furnish support to the child under § 17-320.

The father and mother of every legitimate child under eighteen years of age are constituted joint guardians of the person of such minor. General Statutes § 45-43. " 'Though they [the parents] live separate and apart their legal rights as guardians remain equal.' " *Mullins* v. *Becker,* 113 Conn. 526, 530, quoting *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154, 157. This right of a parent to the custody and control of a minor child "cannot be lost, dedicated or abandoned." *Johnson* v. *Terry,* 34 Conn. 259, 263. It is subject to termination only by court order as limited by definition in § 17-32a (e), quoted above.

Any abandonment by the plaintiff of the decedent as alleged in the defendants' second special defense did not terminate their respective parent-child relationship. The age of the decedent at the time of such desertion is not alleged, but this would be of no legal consequence. The filial kinship of the child to the parent continues beyond the termination at majority of the statutory guardianship. The blood ties between parent and child are too strong and close to be broken except by clear statutory or judicial authority. The plaintiff's paternal relationship to the insured upon his death was factually and legally intact. The defendants' second special defense is, under the circumstances, immaterial and irrelevant to the plaintiff's cause of action.

The plaintiff's demurrer to the defendants' second special defense is, accordingly, sustained.