**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Plaintiff,**

v.

**Robert James DULEK and Betty Lou Dulek, husband and wife, Defendants,**

**and**

**Bonnie Lynn Dulek, Defendant.**

Civ. No. 79–0–414.

United States District Court, D. Nebraska.

Dec. 19, 1980.

---

Thomas J. Guilfoyle, Omaha, Neb., for defendants, Robert James Dulek and Betty Lou Dulek.

Mark S. Bertolini, Omaha, Neb., for defendant, Bonnie Lynn Dulek.

DENNEY, District Judge.

This lawsuit is an interpleader action involving the proceeds of a Servicemen's Group Life Insurance Policy. The stakeholder, The Prudential Insurance Company, claimed no interest in the proceeds and has been dismissed from this action. The claimants contesting for the proceeds of the policy are the insured's former wife, Bonnie Lynn Dulek, and the insured's parents, Robert James Dulek and Betty Lou Dulek [the Duleks].

The claimants have filed cross-motions for summary judgment. Since the facts are uncontroverted, this case is ripe for summary judgment. The only issue for this Court to resolve is whether Bonnie Lynn Dulek was the lawful spouse of the insured at the time of his death.

*Uncontroverted Facts*

1. Terrence Alan Dulek's life was insured under a Servicemen's Group Life Insurance Policy. On February 16, 1978, he completed a form directing that the proceeds of this insurance should be distributed as provided "by law." This designation of beneficiary was not changed prior to the insured's death.

2. On January 19, 1978, the insured and Bonnie Dulek were married in Gonzales, Louisiana, while they were on leave from Offutt Air Force Base. After their marriage, the insured and Bonnie Dulek returned to Omaha, Nebraska, and set up housekeeping. They lived together almost continuously from that time until their separation two and one-half months later.

3. After the separation but prior to the divorce, Bonnie Dulek began living with another man.

4. On May 17, 1978, the insured and Bonnie Dulek executed a separation agreement. This document indicates that the parties, because of "disputes and irreconcilable differences, ... [had] separated and [were] now living separate and apart and [intended] to continue live separate and apart for the rest of their natural lives." The stated purpose of the agreement was "to confirm their separation and [to] make arrangements in connection therewith, including the settlement of all questions relating to their property rights and other rights and obligations growing out of the marriage relation." The agreement does not give the reason why the couple separated.

The agreement evidenced an intent that each party be freed from the other's authority and control as if he or she were single and unmarried. The terms of the agreement provide for the apportionment of the debts between them. Similarly, the agreement also contained a provision distributing the couple's personal property. It, however, did not specifically discuss what should be done with the insurance policy in issue here. The agreement did include a mutual release:

Except as herein otherwise provided, both parties release and forever discharge the other of and from all liability, claims for money or property, causes of action, rights, demands, alimony or support whatsoever in law or in equity which either of the parties hereto ever had or now has against the other except all cause of action for divorce.

Finally, the agreement states "that this agreement contains the entire understanding of the parties. There are no representations, promises, warranties, covenants, or undertakings other than those expressly set forth herein."

5. On April 20, 1979, the District Court of Sarpy County, Nebraska, entered a divorce decree dissolving the marriage of the insured and Bonnie Dulek. The decree states that the insured had been served with summons on February 13, 1979, but had failed to answer. The insured was thus in default and judgment was entered against him.

The decree does not indicate why the divorce was being sought. It merely states that the marriage was irretrievably broken. With respect to the property of the parties, the decree awards to each party the personal property currently in the possession of each. The decree does not specifically provide for the disposition of the insurance policy in question here.

The decree did not become operative immediately. It states:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Decree dissolving the marriage shall not become final and operative until six months have elapsed from the date of entry, except for the purpose of review by appeal, and for such limited purpose only, it shall be treated as a final order on the date entered.

6. The insured died on May 28, 1979, of injuries received in a motorcycle accident. Bonnie did not attend the insured's funeral nor did she pay any of the expenses arising from his death.

7. Robert James Dulek and Betty Lou Dulek are the parents of the insured. Terrence Dulek was not survived by any children.

*Discussion*

The insurance policy that insured the life of Terrence Dulek was issued pursuant to the federal law governing Servicemen's Group Life Insurance. 38 U.S.C. § 765 *et seq.* This federal law specifies the order for the distribution of the insurance proceeds, when a serviceman fails to designate any particular individual as the policy's beneficiary or uses the "by law" designation. The Act provides:

Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiaries as the member or former member may have designated by a writing received prior to death . . .;

Second, if there be no such beneficiary, to the widow or widower of such member or former member;

Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

Fourth, if none of the above, to the parents of such member or former member or the survivor of them; . . . .

38 U.S.C. § 770(a).

Under this statutory scheme, a widow takes precedence over all other potential beneficiaries, except those specifically designated by the insured.

A widow is defined by the statute as meaning "a person who is the lawful spouse of the insured member at the time of his death." 38 U.S.C. § 765(7). Since the insured in the instant case made no specific beneficiary designation, the only issue to be resolved is whether Bonnie Dulek was the lawful spouse of the insured at the time of his death. If she was not, the Duleks, the parents of the insured, are entitled to the proceeds of the policy.

Nebraska law governs the marital status of Bonnie Dulek at the time of the insured's death.[1] Under Nebraska law, no divorce decree becomes "final or operative" until six months after it has been entered. Neb. Rev.Stat. § 42–372 (Reissue 1978). This statute postpones dissolution of a marriage until the decree becomes final. During the six month waiting period, the parties to the divorce action remain legally married. *Copple v. Bowlin*, 172 Neb. 467, 471, 110 N.W.2d 117, 121 (1961); *Scott v. Scott*, 153 Neb. 906, 910, 46 N.W.2d 627, 631 (1951); *Shinn v. Shinn*, 148 Neb. 832, 839, 29 N.W.2d 629, 633 (1947). Thus, it would appear that under Nebraska law, Bonnie was the lawful spouse of the insured at his death, since the divorce decree dissolving her marriage had not become operative.

Despite the apparent import of Neb.Rev. Stat. § 42–372, the Duleks contend that Bonnie Dulek was not the lawful spouse of the insured because of the effect of Section 30–2353 of the Nebraska Probate Code. This section provides:

> Effect of divorce, annulment, and decree of separation. (a) An individual who is divorced from the decedent or whose marriage to the decedent has been dissolved or annulled by a decree that has become final is not a surviving spouse unless, by virtue of a subsequent marriage, he is married to the decedent at the time of death. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section.

> (b) For purposes of parts 1, 2, 3, and 4 of this article and of section 30–2412, a surviving spouse does not include:

> (1) an individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment or dissolution of their marriage, which decree or judgment is not recognized as valid in this state, unless they subsequently participate in a marriage ceremony purporting to marry each to the other, or subsequently live together as man and wife;

> (2) an individual who, following a decree or judgment of divorce or annulment or dissolution of marriage obtained by the decedent, participates in a marriage ceremony with a third individual; or

> (3) an individual who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights against the decedent.

Neb.Rev.Stat. § 30–2353 (Reissue 1979). Relying on Section 30–2353(b)(3), the Duleks argue that the divorce decree obtained by Bonnie Dulek precludes her from being a "surviving spouse" under Nebraska law.[2]

 Assuming that Bonnie Dulek is not a "surviving spouse" under Section 30–2353(b)(3), the Court must still determine whether the Nebraska Probate Code should be used in defining "lawful spouse" for the purposes of Servicemen's Group Life Insurance Policy. For the reasons discussed below, the Court finds that the Nebraska Probate Code does not govern the definition of "lawful spouse" in this case.

---

1. Although the interpretation of federal insurance policies is a matter of federal law, it is generally considered appropriate to determine marital status by referring to state law. In the instant case, the parties agree that Nebraska law is the proper reference point for determining marital status. This choice is appropriate in light of the numerous contacts which this case has with Nebraska. *See generally, Spearman v. Spearman*, 482 F.2d 1203, 1204–05 (5th Cir. 1973).

2. Section 30–2316 of the Nebraska Probate Code governs the effect of property settlements on a person's interest in the estate of the other spouse. This statute states:
> Unless it provides to the contrary, ... a complete property settlement entered into af-

ter or in anticipation of separation, divorce, annulment, or dissolution of a marriage is a waiver of all rights to elective share, homestead allowance, exempt property and family allowance by each spouse in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement. Neb.Rev.Stat. § 30–2316 (Reissue 1979).
Under this provision it would appear that the property settlement executed by the insured and Bonnie Dulek would operate as a waiver of Bonnie's rights to the insured's estate, even if a divorce decree satisfying Neb.Rev.Stat. § 30–2353(b)(3) had not been entered.

The federal statute governing Servicemen's Group Life Insurance requires that this Court ascertain whether Bonnie Dulek was "the *lawful spouse* of the insured ... *at the time of his death.*" (emphasis supplied). 38 U.S.C. § 765(7). Under this statute, the Court must determine Bonnie Dulek's legal status at a particular point in time. A close examination of Section 30–2353 of the Nebraska Probate Code, however, shows that this statute does not purport to define legal status at any particular point in time. Rather, this statute was designed to govern the post-mortem rights of individuals in the estate of the decedent.

Section 30–2353(a) states an obvious proposition: a person is not the surviving spouse of a decedent, if a final divorce decree has been entered dissolving the marriage. Section 30–2353(b) proffered by the Duleks to define lawful spouse, is really designed to deal with the problem of invalid divorces. Comment to Neb.Rev.Stat. § 30–2353. Under Section 30–2353(b), a person who is technically married to the decedent, may be denied the rights of a surviving spouse to share in the decedent's estate.[3] Thus, this provision does not define *status at the time* of a spouse's death. Instead, it limits the *rights* of one lawfully married to the decedent to share in the decedent's estate *after his death.*[4]

This review of Section 30–2353(b) shows that this provision should not be used to define marital status in this case. This provision is designed to describe the rights of individuals after the decedent's death. It does not purport to define status at the time of death. Moreover, the section becomes operative only in those situations where a valid marriage exists at the decedent's death. Under federal law, however, this Court must determine whether a valid marriage existed at the time of death. It would therefore be incongruous for the Court to use this statute, which operates only when a valid marriage exists at the time of death, as support for a finding that Bonnie Dulek was not in fact lawfully married to the insured at his death. *See Tatum v. Tatum,* 241 F.2d 401, 410 (9th Cir. 1957). For these reasons, the Court declines to use Section 30–2353(b) to define marital status in this case.[5]

The Duleks vigorously contend that the holding in *Brinson v. Brinson,* 334 F.2d 155 (4th Cir. 1964) requires that the Nebraska inheritance laws be applied here. The Court, however, is of the opinion that the *Brinson* case can be distinguished from the facts of the instant action.

In *Brinson,* the insured and Clara Brinson were legally married on June 3, 1934, and two children were born to this marriage. On February 26, 1945, the insured obtained a divorce decree *a mensa et thoro* which adjudicated the fact of Clara Brinson's desertion of her husband and children. The decree also gave the insured custody of the children. After the divorce, the insured

---

**3.** Section 30–2353(b) by its own terms is only meant to apply to the following parts of Article 23 of the Nebraska Probate Code: (1) Intestate Succession; (2) Elective Share of Surviving Spouse; (3) Spouse and Children Unprovided for In Wills; and (4) Exempt Property and Allowances.

**4.** In *Manning v. Prudential Insurance Company of America,* 330 F.Supp. 1198 (D.Md.1971), the court held:

[I]t is argued, the fact that an illegitimate child cannot take by intestacy from its father under North Carolina law, should constrain us to *define* the word "child" in § 770(a) as excluding an illegitimate child. The problem with this contention is that a reference to the North Carolina law of intestate succession does not *define* anything, but results merely in a *cul-de-sac* of reasoning which ends with a North Carolina rule which expounds merely certain legal *rights* of illegitimates rather than providing any helpful clue to the definition of child under § 770(a).

*Id.* at 1200.

**5.** A number of courts have refused to use inheritance laws to govern the rights of illegitimate children to the proceeds of federal insurance policies. *E. g., Metropolitan Life Insurance Company v. Thompson,* 368 F.2d 791, 794 (3d Cir. 1966); *Manning v. Prudential Insurance Company, supra,* 330 F.Supp. at 1200; *Metropolitan Life Insurance v. Buckley,* 278 F.Supp. 334, 337 (S.D.Miss.1967). *Cf. Copple v. Bowlin, supra,* 172 Neb. at 374–75, 110 N.W.2d at 122 (Inheritance law limiting rights of illegitimates was not to be applied in case involving recovery of workmen's compensation benefits).

moved to North Carolina with his children. He obtained a job with the United States Government, and thereby became insured by a Federal Employees Group Life Insurance Policy. On September 27, 1947, Clara Brinson acquired a marriage license and was subsequently married. The insured was never remarried. He lived with his children in North Carolina until his death, thirteen years after Clara Brinson's second marriage. Prior to his death, the insured never made any designation of beneficiary. The proceeds of the policy were thus to be distributed as provided by law.[6] The claimants contesting for the proceeds of the policy were Clara Brinson, claiming as the widow of the insured, and the insured's children. The claims of all parties were joined in an interpleader action.

The trial court in Brinson began its analysis of this case by defining "widow" as meaning "the female consort who occupied the position of the legal wife of the deceased husband at the time of his death and as such entitled to share in the distribution of his estate under the applicable laws." *Brinson v. Metropolitan Life Insurance Company*, 226 F.Supp. 94, 95 (E.D.N.C. 1963). The Court then recognized that the Virginia divorce *a mensa et thoro* did not dissolve the marriage of the insured and Clara Brinson. Quoting the Virginia and North Carolina inheritance statutes, the court, however, found that although the marriage was not dissolved, Clara Brinson was barred from taking any interest in the decedent's estate. *Id.* at 95–96. This bar was created because she had abandoned her husband. Based on these statutes extinguishing Clara Brinson's interest in her husband's estate, the trial court found that she could not be considered the widow of the insured for the purpose of claiming the insurance proceeds. *Id.* at 96.

On appeal, the Fourth Circuit Court of Appeals, affirmed the trial court's ruling, but did not adopt the lower court's analysis in total. The circuit court determined that

the term "widow" means "lawful widow." The court's research, however, revealed that North Carolina law[7] had no definition of lawful widow in a situation such as confronted the court. While recognizing that the Virginia divorce decree did not dissolve the marriage, the court noted that the North Carolina inheritance laws severely curtailed the rights of a wife separated from her husband pursuant to a divorce decree *a mensa et thoro*. However, the court did not expressly rely on this statute to define lawful widow. The court instead stated:

> ... Clara Brinson argues that the above quoted statute misses the mark, that it was passed as an attempt to foreclose a woman's sharing in her husband's estate when she had committed certain acts, specifically enumerated in the statute, and that it has no application to her claim to property outside her husband's estate. She maintains that she seeks no part of Ernest Brinson's estate, but rather that she is the beneficiary of a contract of insurance between Metropolitan and Ernest Brinson which was in effect at his death. We note, however, that N.C.Gen.Stat. § 31–A (1961), entitled Acts Barring Property Rights, successor statute to N.C.Gen.Stat. § 52–20 (1949), states that: "This chapter shall not be considered penal in nature, but *shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong.*" N.C.Gen.Stat. § 31A–15 (1961). This statement is merely a codification of a pre-existing state policy, which was in effect at the date of Ernest Brinson's death, and it is *entirely consistent with this policy to hold Clara Brinson is equitably barred from the insurance proceeds under N.C.Gen.Stat. § 52–20 (1959).* (emphasis supplied).

*Brinson v. Brinson, supra*, 344 F.2d at 159. Thus, the North Carolina intestate law was not used to define lawful widow. The court

---

6. The order of distribution mandated by the statute is the same as in the instant case.

7. Unlike the trial court, the circuit court did not rely on Virginia law in making its ruling. *Brinson v. Brinson, supra*, 334 F.2d at 158.

rather held that the long-standing and broad-reaching policy evidenced by the inheritance statute created an equitable bar to Clara Brinson's recovery of the proceeds. *See Id.* at 159 n.8.

Interestingly, the North Carolina inheritance statute did not provide the primary basis for the appellate court's decision. A "more substantial basis" for affirming the lower court's decision was found in the equitable principles which govern interpleader actions. *Id.* at 159. Applying these equitable principles, the Court found that Clara Brinson had not come to court with clean hands. This finding was based on the fact that Clara Brinson could only prevail if she could prove that her second marriage was bigamous. In addition, the court noted that Clara Brinson sought "to play the role of widow to a man she has been judicially found to have deserted in a contested divorce case and to supersede the children who were by the court awarded to that man and not to her." *Id.* at 160. Because of these facts, the court held that equity barred Clara Brinson from recovering the proceeds of the federal insurance policy.

The portion of the Brinson opinion involving the North Carolina inheritance statute should not be applied to the instant action.[8] In *Brinson*, the court was confronted with a state law which did not provide a definition of "lawful widow" for the facts of that case. In contrast, the Nebraska law, Neb. Rev.Stat. § 42–372, clearly defines lawful spouse in the instant case. It is thus not necessary or appropriate to refer to Nebraska's inheritance laws to define status in the instant case. Moreover, the North Carolina statute relied on in *Brinson* was a codification of pre-existing state policy, and was meant to be broadly construed to further that policy. Unlike the North Carolina statute, Section 30–2353(b) of the Nebraska Probate Code specifically limits the applica-

tion of its provisions to portions of the probate code dealing with intestate succession, elective share, omitted spouses and children, exempt property, and appointment of personal representative. The limited applicability of this provision is also evidenced by Section 30–2714 of the probate code. This section, which makes insurance policies nontestamentary instruments, suggests that the distribution of insurance policy proceeds is not governed by the Code.[9] In addition, Section 30–2353(b) was designed to change the prior case law of Nebraska which had held that, in most situations, interlocutory divorce decrees did not bar the intestate rights of a spouse. Nebraska Comment to Neb.Rev.Stat. § 30–2353. *See generally In re Estate of Bassett*, 189 Neb. 206, 201 N.W.2d 848 (1972) (Illustrating prior case law); *In Re Parkers Estate*, 177 Neb. 197, 128 N.W.2d 696 (1964) (Same). Finally, it should be noted that the persuasive value of the *Brinson* analysis is somewhat weakened by the fact that the portion of the opinion relied on by the Duleks was not the primary basis of the court's decision. It also appears that the court's reliance on state inheritance law is in conflict with the decision of another circuit, since the *Brinson* court tacitly conceded that a legal marriage existed at the time of death. *See Tatum v. Tatum, supra*, 241 F.2d at 210. For these reasons, the Court is of the opinion that the *Brinson* analysis should not be adopted in this case.

One other case, *Metropolitan Life Ins. Co. v. Manning*, 568 F.2d 922 (2d Cir. 1977), deserves brief mention at this point. In *Manning*, the court used language in a footnote which suggests that the distribution of proceeds of a federal insurance policy should be based on the state's laws of intestate succession. *Id.* at 929 n.11. The Court does not believe the statements in this footnote require the application of the Nebraska Probate Code in this case. Unlike the

---

**8.** The portion of the opinion dealing with the application of general equitable principles is discussed below.

**9.** The Comment to Section 30–2714 states:
Because the types of provisions described in the statute are characterized as nontestamen-

tary, the instrument does not have to be executed in compliance with section 30–2327; nor does it have to be probated, nor does the personal representative have the power or duty with respect to the assets involved.

*Manning* case, the instant action involves a statute, Neb.Rev.Stat. § 42–372, which unequivocally establishes the marital status of the claimant at the time of the insured's death. Thus, this Court need not refer to the state's inheritance laws to determine whether Bonnie Dulek was "the lawful spouse of the insured . . . at the time of his death." 38 U.S.C. § 765(7). Although it may be appropriate to consider a state's intestate laws when marital status is not clearly defined, the instant action is not such a case.

■ In summary, the Court finds that the legal status of Bonnie Dulek should be governed by Neb.Rev.Stat. § 42–372 and not by the Nebraska Probate Code. Under Neb.Rev.Stat. § 42–372, Bonnie Dulek was the "widow" of the insured as that term is defined in the federal statute, 38 U.S.C. § 765(7). The Court must, however, still determine whether any equitable principles bar Bonnie Dulek's recovery of the policy proceeds, notwithstanding the fact that she was the insured's widow.[10]

■ Interpleader actions are equitable proceedings governed by equitable principles. *Great American Insurance Company v. Bank of Bellevue*, 366 F.2d 289, 293 (8th Cir. 1966). Thus, one legally entitled to the proceeds of a federal insurance policy may be barred from relief in an interpleader action, if the party's conduct has violated the clean hands doctrine. *Brinson v. Brinson, supra,* 334 F.2d at 159–60; *Brantley v. Skeens,* 266 F.2d 447, 452–53 (D.C.Cir.1959). Although equitable principles apply to the instant action, the Court is of the opinion

that Bonnie Dulek's conduct was not in violation of the clean hands doctrine.

It is true that Bonnie Dulek did seek a divorce from the insured. This action alone does not amount to unconscionable behavior since the record contains no evidence which would suggest that the separation and ultimate divorce were the result of Bonnie Dulek's wrongful conduct. *Cf. Brinson v. Brinson, supra,* 344 F.2d at 159–60 (claimant's separation and divorce from insured were result of claimant's desertion of insured). Similarly, the fact that Bonnie Dulek lived with another man after her separation cannot be considered unconscionable behavior. It appears that something more substantial is required before the Court should bar her right to recover. *Cf. Brinson v. Brinson, supra,* 344 F.2d at 159–60 (claimant knowingly enters bigamous marriage after leaving insured); *Brantley v. Skeens, supra,* 266 F.2d at 452–53 (claimant admits bigamous second marriage and prior perjury in order to prove right to proceeds). In short, the actions of Bonnie Dulek were not unconscionable. The Court therefore finds that the clean hands doctrine does not bar her claim to the proceeds of the insurance policy.

An order will be filed contemporaneously with this Memorandum Opinion.

10. The Duleks have not specifically raised the issue of whether the property settlement operated as a waiver of Bonnie Dulek's right to the proceeds of the policy. The Court, however, notes that, although such settlement agreements may operate as a waiver under state law, these agreements cannot effect a change in federally mandated order of distribution. *See generally United States v. Donall,* 466 F.2d 1246, 1247–48 (6th Cir. 1972); *Taylor v. United States,* 459 F.2d 1007, 1008–09 (9th Cir. 1972), cert. denied 409 U.S. 967 (1972); *Travelers Insurance Company v. Fields,* 451 F.2d 1292, 1295–96 (6th Cir. 1971), cert. denied 406 U.S. 919, 92 S.Ct. 1772, 32 L.Ed.2d 118 (1972); *Morgan v. United States,* 315 F.Supp. 213, 214–15 (E.D.Ky.1969); *Fitzstephens v. United States,* 189 F.Supp. 919, 921 (1960). *But see O'Brien v. Elder,* 250 F.2d 275, 278–80 (5th Cir. 1957). In any event, even if a settlement could operate as a waiver of rights to federal insurance proceeds, the agreement between the insured and Bonnie Dulek did not specifically waive her rights to the insurance proceeds, and thus does not operate as a waiver. *See Lincoln National Life Ins. Co. v. Blight,* 399 F.Supp. 513, 514–16 (E.D.Pa.1975); *aff'd without opinion* 538 F.2d 319, 322 (3rd Cir. 1976); *Costello v. Costello,* 379 F.Supp. 630, 632–34 (D.Wyo.1974).